IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS GERALD CLAIBORNE,

   Plaintiff,      No. 2:10-cv-2427 LKK EFB P

 vs.

BLAUSER, et al.,

          <u>FINDINGS AND RECOMMENDATIONS</u>

   Defendants.

_____/

   Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42 U.S.C. § 1983.  Pending before the court is defendants' September 21, 2012 motion for summary judgment.  Dckt. No. 59.  For the reasons explained below, it is recommended that the motion be denied.

**I. The Complaint**

   This action proceeds on the verified complaint filed September 10, 2010.  Dckt. No. 1. Plaintiff alleges as follows:  Plaintiff is mobility impaired due to a total knee replacement and requires a cane to ambulate.  Dckt. No. 1 at 3.[1]  On May 3, 2010, defendant Blauser informed plaintiff she had received a call informing her that plaintiff had been "hanging out."

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

*Id.* at 4.  Plaintiff denied he had been hanging out.  *Id.*  Defendant Blauser then demanded that plaintiff be confined to his cell and denied yard or day-room privileges.  *Id.*  In response, plaintiff asked defendant Blauser if he could speak with the yard sergeant.  *Id.*  Defendant Blauser repeated her order that plaintiff go to his cell.  *Id.*  Plaintiff again requested to see the yard sergeant.  *Id.*  Defendant Blauser then took plaintiff's cane and ordered plaintiff to "cuff up" without waist chains.  *Id.*  Plaintiff objected when defendant Blauser took his cane and handcuffed him behind his back, but defendant Blauser responded that it was California Department of Corrections and Rehabilitation ("CDCR") procedure.  *Id.*

Plaintiff further alleges that after being handcuffed, defendants Blauser and Martin "march[ed]/drag[ged]" plaintiff across the yard, "which is riddled with potholes and grass patches." *Id.* at 5.  Plaintiff tried to alert defendants to his difficulty walking across the yard without his cane, but they continued to jerk plaintiff's arm and pull him across the yard.  *Id.*  As a result, plaintiff stumbled.  *Id.*  Defendant Blauser then insisted that plaintiff was trying to get away from her and could not be convinced that plaintiff needed his cane or that they were dragging him too fast.  *Id.*  During the escort, plaintiff stumbled over a three to five inch lift on the ground.  *Id.*  When defendant Blauser felt the weight of plaintiff coming down, she yelled "He's resisting," and took plaintiff to the ground.  *Id.*  Defendant Blauser then kneed him in the ribs, on his replacement knee, and on his head.  *Id.*  She also punched him in the face three to five times, until relief officers arrived.  *Id.* at 6.

As a result of defendants' actions, plaintiff alleges that he suffered abrasions to his face and knee, his knee became "wobbly," his ribs were "re-injured," and he began to suffer headaches.  *Id.* at 6, 10.  Plaintiff's injuries could have been prevented by application of waist restraints, use of his cane, and by taking appropriate care in walking plaintiff on level terrain.  *Id.* at 7.

////

////

2

Plaintiff alleges that defendants were or should have been aware of plaintiff's medical condition.  *Id.* at 7.  Further, plaintiff generally alleges that defendants "knew that constitutional violations would take place and/or was taking place [sic] and failed to take any actions to correct the constitutional violations."  *Id.* at 12.

In the court's screening order, the court found that "plaintiff's allegations of being dragged while handcuffed behind his back, and subsequently forced to the ground and beaten, state[d] colorable Eighth Amendment excessive force and deliberate indifference to medical needs claims against defendants Blauser and Martin."  Dckt. No. 22 at 7-8.

## II.    Defendants' Evidentiary Objections

Defendants have submitted fourteen objections to plaintiff's evidence submitted in support of his opposition to the summary judgment motion.  Defendants' Objection number 5 addresses plaintiff's statement in his response to defendants' Undisputed Fact No. 9.  Plaintiff states: "[I]t was common knowledge among (HDSP) African-American inmate population of Yard A, that Officer McBride was known to use racial slurs and comments towards Black inmates, of which the Plaintiff is one."  This statement lacks foundation and, at best, is marginally relevant, and constitutes improper and prejudicial character evidence.  Fed. R. Evid. 403, 404.

Defendants' remaining evidentiary objections are overruled.

## III.    Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

1   case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a

2   circumstance, summary judgment must be granted, "so long as whatever is before the district

3   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56[(a)],

4   is satisfied." *Id.* at 323.

5        To defeat summary judgment the opposing party must establish a genuine dispute as to a

6   material issue of fact. This entails two requirements. First, the dispute must be over a fact(s)

7   that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S.

8   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

9   law will properly preclude the entry of summary judgment."). Whether a factual dispute is

10   material is determined by the substantive law applicable for the claim in question. *Id.* If the

11   opposing party is unable to produce evidence sufficient to establish a required element of its

12   claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning

13   an essential element of the nonmoving party's case necessarily renders all other facts

14   immaterial." *Celotex*, 477 U.S. at 322.

15        Second, the dispute must be genuine. In determining whether a factual dispute is genuine

16   the court must again focus on which party bears the burden of proof on the factual issue in

17   question. Where the party opposing summary judgment would bear the burden of proof at trial

18   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

19   claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

20   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit

21   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

22   for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

23   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

24   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

25   477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

26   ////

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 60; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**IV.   Analysis**

    **A.   Excessive Force Claim**

Defendant Martin seeks summary adjudication of plaintiff's excessive force claim against him.  (Defendant Blauser does not seek summary adjudication of plaintiff's excessive force claim against her.).

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment."  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in

1   violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force

2   maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or

3   restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In making this determination,

4   the court may evaluate (1) the need for application of force, (2) the relationship between that

5   need and the amount of force used, (3) the threat reasonably perceived by the responsible

6   officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7.

7          Defendant Martin argues that plaintiff's complaint lacks facts showing excessive force on

8   defendant Martin's part.  Defendant Martin notes that plaintiff indicated in his deposition

9   testimony that he sought to impose liability on defendant Martin for failing to intervene to stop

10  defendant Blauser's excessive force.  According to defendant Martin, "[t]here is no Eighth

11  Amendment failure-to-protect claim before the Court . . . .  Plaintiff did not pursue such a claim

12  in his complaint, and the Court did not find one during its screening."  Dckt. No. 59-1 at 11.

13         Plaintiff, however, points out that he did, in fact, state facts showing excessive force by

14  defendant Martin.  Plaintiff's complaint alleges that defendant Martin, along with defendant

15  Blauser, dragged and jerked plaintiff across an uneven yard while ignoring plaintiff's protests

16  that this manner of transport would injure his replacement knee.  Dckt. No. 1 at 5.  Defendants

17  concede that plaintiff's allegations that defendants pulled, snatched, or moved too quickly across

18  the yard are "potentially relevant to Plaintiff's excessive force claim."  Dckt. No. 59-1 at 13.  In

19  addition, plaintiff alleged generally that defendant Martin failed to take action to prevent a

20  constitutional violation he knew was taking place.  Dckt. No. 1 at 12.

21         Further, even if plaintiff had not alleged conduct by defendant Martin that could amount

22  to excessive force and had not alleged that defendant Martin failed to prevent a constitutional

23  violation, defendants' argument presumes that there exists a free-standing "failure-to-intervene"

24  claim that is separate from plaintiff's excessive force claim and thus must be separately pleaded

25  and identified at screening.  This court disagrees.  A defendant is liable for failing to intervene

26  only where there has been an underlying constitutional violation warranting intervention.  The

failure to intervene is a theory of liability that derives meaning from the underlying violation

(here, excessive force), not a separate claim. *Lynch v. Barrett*, No. 09-cv-00405-JLK-MEH,

2010 U.S. Dist. LEXIS 65512, at *19-20 (D. Colo. June 9, 2010). Accordingly, the failure of the

complaint or screening order to identify or delineate a cognizable "failure to intervene" claim

separately from plaintiff's excessive force claim does not prevent plaintiff from seeking to

impose liability on defendant Martin for failing to intervene to stop defendant Blauser's

excessive force. It is enough that the facts alleged in the complaint show that defendant Martin

failed to intervene to prevent defendant Blauser's unconstitutional conduct.

### B.  Deliberate Indifference Claim

Both defendants seek summary adjudication of plaintiff's claim that they were

deliberately indifferent to his serious medical needs during the interaction that occurred on May

3, 2010. To establish a violation of the Eighth Amendment based on inadequate medical care,

plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need is

one that significantly affects an individual's daily activities, an injury or condition a reasonable

doctor or patient would find worthy of comment or treatment, or the existence of chronic and

substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992),

*overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 1997) (*en

banc*). To act with deliberate indifference, a prison official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is

liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk

by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official

acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

////

////

8

1          Defendants first argue that the undisputed facts show that they took reasonable measures

2  to abate the risk plaintiff faced in traversing the yard without his cane because: (1) they needed

3  to take the cane as a security precaution, and (2) they held plaintiff "securely by his biceps and

4  maintained control of him throughout the escort" after they took the cane.  Dckt. No. 59-1 at 8.

5  Viewing the evidence in the light most favorable to plaintiff, however, there is a dispute over

6  whether defendants acted reasonably with regard to plaintiff's disabled knee.  Plaintiff disputes

7  that his behavior justified defendant Blauser confiscating his cane and restraining him with

8  handcuffs.  Dckt. No. 63 at 5-6.  More importantly, even if defendant Blauser was justified in

9  doing so, plaintiff's evidence is that, once he was restrained, defendants dragged him across

10  uneven terrain in such a manner that it endangered his replacement knee and caused him to

11  stumble and jerk uncontrollably.  Dckt. No. 1 at 5.  While defendants assert that these facts are

12  relevant only to plaintiff's excessive force claim, they present no authority or argument

13  supporting that assertion.  Indeed, plaintiff's proffered facts are in direct contradiction to

14  defendants' claim that they should not be held liable for deliberate indifference because "they

15  eliminated any risk of harm to Plaintiff based on his medical condition."  Dckt. No. 59-1 at 8.

16          Lastly, defendants argue that they should be granted qualified immunity from liability for

17  deliberate indifference because the law in May 2010 did not give defendants fair notice that

18  confiscating plaintiff's cane and using waist-chain restraints under the circumstances would

19  amount to a constitutional violation.  Defendants cite *Kwanzaa v. Brown*, No. 05-5976 (RMB),

20  2009 U.S. Dist. LEXIS 107563, at *68-69 (D. N.J. Nov. 17, 2009) and *Robinson v. Catlett*, 725

21  F. Supp. 2d 1203, 1209 (S.D. Cal. 2010) in support of this argument.  Defendants over-

22  generalize in their reading of *Kwanzaa* and its applicability here.

23          In *Kwanzaa*, the court granted summary judgment to defendants on plaintiff's claim that

24  they had wrongfully confiscated his cane when plaintiff did not dispute that he had threatened to

25  physically harm defendants.  2009 U.S. Dist. LEXIS 107653 at *68-69.  *Kwanzaa* indicates that

26  a correctional officer's determination to confiscate the cane of a disabled inmate is reasonable

where the inmate threatens to harm another.  In the instant case, however, defendants do not claim that plaintiff threatened to harm them.  Rather, they claim that defendant Blauser perceived plaintiff's behavior (arguing and refusing to return to his cell) as posing a security risk.  Dckt. No. 59-3, Decl. of Blauser at ¶¶ 5-9.

Similarly, in *Robinson*, the court granted summary judgment to defendants on plaintiff's claim that they had wrongfully confiscated his cane where the undisputed facts showed that plaintiff had attempted to strike another inmate with his cane.  725 F. Supp. 2d at 1209.  Again, this case indicates that confiscation of an inmate's cane is reasonable where the inmate shows an intent to harm another, but here there is no dispute that plaintiff did not threaten or attempt to harm defendants or anyone else.

Further, defendants' qualified immunity argument misses a crucial point — plaintiff does not only challenge the confiscation of his cane and his placement in handcuffs, but also the manner by which he was escorted across the prison yard.  He says that during the escort he stumbled over a three to five inch lift on the ground.  He also says that as he stumbled defendant Blauser yelled "He's resisting," and took plaintiff to the ground and then kneed him in the ribs, on his replacement knee, and on his head, and punched him in the face three to five times, until relief officers arrived.  Defendants offer no argument or caselaw showing that the state of the law in May 2010 was such that a reasonable officer would not have been put on notice that dragging or pulling a disabled inmate across uneven terrain in a manner such that the inmate stumbles and jerks uncontrollably could amount to deliberate indifference or gratuitous force and pain in violation of the Eighth Amendment.

## V.    Recommendation

For all of the above reasons, it is hereby RECOMMENDED that the September 21, 2012 motion for summary judgment (Dckt. No. 59) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 4, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE