UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS G. CLAIBORNE, | No. 2:10-cv-2427-LKK-EFB P |
| Plaintiff, | |
| v. | PRETRIAL ORDER |
| BLAUSER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He claims that defendants Blauser and Martin, both correctional officers at High Desert State Prison (HDSP), used excessive force and were deliberately indifferent to his serious medical needs during an escort on May 3, 2010, in violation of the Eighth Amendment. In accordance with the parties' pretrial statements (ECF Nos. 98, 110), the court orders as follows:

**JURISDICTION/VENUE**

This court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391 and Local Rule 120(d). There is no dispute over either jurisdiction or venue.

**UNDISPUTED FACTS**

1. Plaintiff Dennis G. Claiborne (E-91198) is a state prisoner properly in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff was housed at HDSP at all times material to this case.

/////

1

2. Plaintiff is designated as a mobility-impaired inmate based on a chronic problem with his right knee.

3. In May 2010, Plaintiff was a member of HDSP's Disability Placement Program, and as such, he wore a green vest to identify himself to staff as a member of the program.

4. In May 2010, Plaintiff had physician's orders, known as medical accommodation chronos, which recommended (1) that Plaintiff be allowed to use a one-point cane, and (2) that correctional staff use waist chains whenever they escorted Plaintiff within the institution.

5. Waist chains are different than traditional handcuffs, which are typically applied behind the back, because they allow a mobility-impaired inmate to keep his hands at his sides during an escort, which allows him to use any prescribed accommodation devices, such as a cane.

6. On May 3, 2010, at approximately 0700 hours, Correctional Officer D. McBride observed Plaintiff lingering in the morning pill call line, socializing with other inmates.

7. Officer McBride, who was working in the Facility A observation tower that morning, told Plaintiff over the public address system to get his medications and to return to his housing unit.

8. Officer McBride radioed Defendant Correctional Officer J. Blauser, who was working in Housing Unit 2—Plaintiff's housing unit—and asked Officer Blauser to counsel Plaintiff when he returned to the unit.

9. At approximately 0720 hours, Plaintiff returned to Housing Unit 2.

10. As Plaintiff approached the desk in the housing unit's dayroom area, Officer Blauser counseled Plaintiff on his behavior in the medication line, and the requirement that he promptly return to the unit when instructed to do so by correctional staff.

11. Plaintiff began arguing with Officer Blauser, and insisted that he had not been lingering in the medication line.

12. After some additional dialogue, Officer Blauser ordered Plaintiff to "lock up," which meant that he was to return to his assigned cell immediately.

/////

13. CDCR regulations require inmates to comply with orders given by correctional staff without delay.

14. After Officer Blauser ordered Plaintiff to return to his cell, he refused to do so and insisted on talking with the Facility A yard sergeant.

15. Plaintiff was carrying a one-point cane when he approached Officer Blauser in the dayroom area, and he continued to hold the cane as he was refusing Blauser's lockup order.

16. Based on Plaintiff's appearance and conduct, Officer Blauser thought that Plaintiff's behavior was creating an escalating security risk that required immediate attention.

17. After Plaintiff refused Officer Blauser's order to return to his cell, she instructed Plaintiff to "cuff up."

18. Plaintiff turned around and placed his hands behind his back.

19. Plaintiff did not mention having a waist chain chrono, and Blauser did not know for sure whether he had a valid chrono.

20. Officer Blauser cuffed Plaintiff's wrists behind his back using traditional handcuffs.

21. Plaintiff stated to Officer Blauser and Defendant Correctional Officer G. Martin that it was difficult for him to use his cane while walking with his hands cuffed behind his back.

22. Officer Martin then took Plaintiff's cane and assured Plaintiff that he would not let him fall.

23. Officer Blauser took control of Plaintiff by his right bicep, while Officer Martin took Plaintiff by his left bicep, and they began escorting Plaintiff from Housing Unit 2 to the program office to see the Facility A yard Sergeant.

24. After Officers Blauser and Martin escorted Plaintiff outside Housing Unit 2, they began walking across the main recreation yard in the most direct path to the program office.

25. Plaintiff attempted to inform Officers Blauser and Martin that he had a medical accommodation chrono for waist chains and to be escorted on level terrain only. The officers ordered plaintiff to keep walking.

/////

3

26. When they were approximately half-way across the yard, Plaintiff either stumbled or pulled his right arm away from Officer Blauser, breaking her grasp.

27. Officer Blauser stopped the escort immediately, regained control of Plaintiff's arm, and warned Plaintiff not to jerk away from her again.

28. In response, Plaintiff said, "You're not gonna rush me," or words to that effect.

29. Once the escort reached the patio area in front of the Facility A program office, Plaintiff either stumbled or pulled his right arm away from Officer Blauser again, breaking her grasp a second time.

30. Based on Plaintiff's conduct, Officer Blauser determined that the safest course for Plaintiff and the escorting officers was to suspend the escort immediately.

31. Officer Blauser ordered Plaintiff to get down on the ground, and she and Officer Martin took Plaintiff to the ground.

32. Officer Blauser announced a "Code 1" over the institutional radio, which was meant to summon additional correctional staff.

33. After Plaintiff was secured on the ground, Officer Blauser maintained control of Plaintiff by his right arm, while Officer Martin maintained control of Plaintiff's left arm.

34. Responding staff arrived within seconds, and two other correctional officers assumed responsibility for the escort at that time.

35. Later that day, Correctional Sergeant K. Guillen conducted a videotaped Use of Force interview with Plaintiff.

36. During the interview, Plaintiff made no allegations of staff misconduct, and he told Sergeant Guillen that the escorting officers did not use force inappropriately.

37. Plaintiff was issued a rules violation (CDC Form 115) for his conduct during the May 3, 2010 escort.

38. At the disciplinary hearing that followed, Plaintiff was found guilty of "Resisting a Peace Officer."

39. Based on the guilty finding, Plaintiff forfeited 90 days of good-time credit, and he lost 30 days of yard time.

40. On May 24, 2010, Plaintiff sought medical attention for injuries he claims to have suffered because of the May 3, 2010 escort.

41. Plaintiff's knee was x-rayed on August 16, 2010.

**DISPUTED FACTUAL ISSUES**

Plaintiff and defendants previously sought summary judgment.  In denying both motions, the court found disputed issues of material fact as to the excessive force claim and the deliberate indifference claim.  As to the excessive force claim, the parties dispute whether the force used was necessary, whether defendants perceived that plaintiff posed a threat, and whether the force was used in a good-faith effort to maintain discipline or was wanton or gratuitous.  ECF No. 71 at 8.  They also dispute whether Martin failed to intervene to stop Blauser's use of excessive force.  ECF No. 80 at 7-8.  As for the deliberate indifference claim, the parties dispute whether defendants took reasonable measures to abate the risk that plaintiff faced in being escorted without his cane by supporting him during the escort.  ECF No. 71 at 8; ECF No. 80 at 9.  For those reasons, summary judgment was denied.

Defendants also identify the following disputed factual issues:

1. Whether Officers Blauser and Martin used reasonable force in escorting Plaintiff from Housing Unit 2 to the Facility A program office.
2. Whether Plaintiff intentionally broke away from Officer Blauser during the escort, or whether Plaintiff fell involuntarily.
3. Whether Plaintiff was arguing with Officers Blauser and Martin during the escort.
4. Whether Officer Blauser struck Plaintiff three-to five times after he was secured on the ground in front of the Facility A program office.
5. Whether Plaintiff's refusal to return to his cell and his other conduct in Housing Unit 2 created an escalating security risk.
6. Whether Officers Blauser and Martin were authorized to confiscate Plaintiff's cane in light of Officer Blauser's determination that Plaintiff was creating a security risk.
7. Whether Officers Blauser and Martin were authorized to use traditional handcuffs to secure Plaintiff, rather than waist chains, during the escort.

5

   8. Whether Officers Blauser and Martin were reasonable in crossing Facility A's main exercise yard on their way to the program office.

**DISPUTED EVIDENTIARY ISSUES**

Plaintiff requests that there "be no mention of his incarceration or arrest record during trial." ECF No. 98 at 17.

In addition, defendants identify the following disputed evidentiary issues:

1. Whether evidence concerning any of Plaintiff's claims against any defendants that have been dismissed is admissible for any purpose.
2. Whether Plaintiff should be allowed to offer any opinion testimony concerning his medical records or medical condition.
3. Whether Plaintiff's abstract of judgment, or the abstract of judgment for any incarcerated witnesses, are admissible for impeachment purposes.
4. Whether individual code sections of Title 15 of the California Code of Regulations are admissible.

Where appropriate, disputed evidentiary issues shall be raised in motions in limine filed not later than twenty-one days before trial. Oppositions thereto shall be filed not later than fourteen days before trial. Reply briefs, if any, shall be filed not later than seven days before trial.

**RELIEF SOUGHT**

Plaintiff seeks compensatory and punitive damages totaling $10 million.[1]

Defendants pray for judgment in their favor with an award of costs.

**POINTS OF LAW**

Plaintiff includes the following "Points of Law" section in his pretrial statement:

> Punitive damages may be recovered in Civil Rights Act cases for reckless or callously indifferent deprivations of federal statutory or constitutional rights, as well as for deprivations motivated by actual malicious intent. Punitive damages

---

[1] Plaintiff filed a document that he styled as a "Motion for Judgment as a Matter of Law." While the title suggests a request for summary judgment, it does not seek any specific relief other than asking to change the prayer to "a flat $10,000,000.00 in the interest of justice." ECF No. 86 at 5. The motion is denied as unnecessary. As reflected herein under the heading "Relief Sought," the amount plaintiff is seeking has been noted in this pretrial order.

may be recovered for reckless or callous indifference to federally protected rights even when the standard of liability for compensatory damages is also one of recklessness.

ECF No. 98 at 12-13.[2]

Defendants include the following "Points of Law" section in their pretrial statement:

This case is proceeding on Plaintiff's Eighth Amendment excessive-force and medical-deliberate-indifference claims against Defendants Blauser and Martin.

**Excessive Force**

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To state a claim for the excessive use of force in violation of the Eighth Amendment, Plaintiff must allege facts that, if proven, would establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the Court may evaluate (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7.

**Deliberate Indifference to Medical Needs**

To state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, Plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See, e.g., McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 1997) (en banc).

Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that a prisoner faces "a substantial

---

[2] Plaintiff included a "Points of Law" section regarding perjury, which is simply not relevant to the claims or defenses in this action. *See* ECF No. 98 at 13-14. Plaintiff's request for a "separate trial of issues on the defendants['] acts of perjury" is denied. ECF No. 98 at 18.

risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in a certain situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002).

In *Saucier v. Katz*, the Supreme Court outlined a two-step analysis for determining whether qualified immunity is warranted. *Id.*, 533 U.S. at 201. The first inquiry is whether, taken in the light most favorable to the plaintiff, the alleged facts show the officer's conduct violated a constitutional right. *Id.* at 201. If a violation is established, the second inquiry is whether the right was clearly established. *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* In determining whether the right was clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The purpose of qualified immunity "is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. In an excessive force case, the reasonableness of the officer's belief should be judged from the perspective "on-scene." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). If an officer reasonably, but mistakenly, believed a person was likely to fight back, the officer would be justified in using more force than necessary. *Saucier*, 533 U.S. at 205. "The calculus of reasonableness" must allow for the reality that officers are often forced to make split-second decisions as to what amount of force is required in circumstances that are tense, uncertain, and rapidly evolving. *Id.*, 533 U.S. at 211 (citation omitted).

Recently, the Supreme Court reconsidered the mandatory, two-step procedure set forth in *Saucier* and concluded that the two-step *Saucier* procedure should not be regarded as an inflexible requirement. *Pearson*, 555 U.S. at 236. The Court noted that, while the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals may exercise their sound discretion in deciding which of the

two prongs should be addressed first in light of the circumstances in a particular case. *Id.*

### Punitive Damages

Plaintiff is not entitled to punitive damages. Punitive damages are only available in a § 1983 action where the defendant's conduct is moted by an evil motive or intent, or where it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 51 (1983).

It is not enough that a defendant may have acted in an objectively unreasonable manner; the defendant's subjective state of mind must be assessed. *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). Acts or omissions that are malicious, wanton, or oppressive may support an award of punitive damages. *Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005).

### Impeachment by Prior Felony Conviction

The jury will necessarily consider each witness's credibility in reaching a verdict. To meet his burden of proof at trial, Plaintiff is expected to testify to his version of events.

Rule 609 of the Federal Rules of Evidence provides that evidence of a witness's prior felony conviction may be used to impeach that witness's testimony. Defendants contend that no one who has a prior felony conviction is entitled to a presumption of truthfulness, which could occur if impeachment were not allowed. *See United States v. Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("As any trial lawyer knows, felony convictions trench heavily upon such a person's credibility"). Accordingly, Defendants will seek to impeach Plaintiff's trial testimony, and that of any incarcerated witnesses, with evidence of their prior felony convictions.

Defendants will not try to admit Plaintiff's abstract of judgment, or that of any incarcerated witness, if each answers truthfully that they have been convicted of a felony.

ECF No. 110 at 6-9.

The parties shall serve and file trial briefs (as described in Local Rule 285) no later than fourteen days before trial.  The parties shall thoroughly address all applicable claims and defenses in their trial briefs.

/////

/////

**ABANDONED ISSUES**

In choosing to not amend his complaint in accordance with the court's August 31, 2011 screening order (ECF Nos. 22, 31), plaintiff abandoned any claims beyond the Eighth Amendment claims against defendants Blauser and Martin found by the court to be cognizable.

**WITNESSES**

Plaintiff anticipates calling the following incarcerated witnesses:

1. Inmate D. Bullock (CDCR No. G-48744)
2. Inmate T. Tran (CDCR No. T-42650)
3. Inmate Albert Robinson (CDCR No. T-33241)

Plaintiff's list of incarcerated witnesses also included inmates M. Smith (CDCR No. P-60884), Blanche (CDCR No. D-53404), Little (CDCR No. F-06783), and D. Obligacion (CDCR No. G-13728). ECF No. 98 at 23. According to the online CDCR Inmate Locator, these individuals are not incarcerated. Accordingly, the court will remind plaintiff of the requirements for obtaining the attendance of unincarcerated witnesses:

A party need not obtain an order to produce an unincarcerated witness who intends to testify voluntarily. However, the party is responsible for ensuring attendance of such a witness.

To obtain the presence of a witness who is at liberty and who refuses to testify voluntarily, the party who intends to present that witness's testimony must complete a subpoena and submit it to the United States Marshal for service upon the witness. Blank subpoena forms may be obtained from the Clerk of the Court. Completed subpoenas must be submitted *not earlier than four weeks and not later than two weeks before trial*. The party must also tender through the United States Marshal a money order payable to the witness in the amount of the daily witness fee, $40.00, *plus the witness's travel expenses*. If plaintiff seeks the witness's presence and proceeds in forma pauperis, then plaintiff must also submit a copy of the order granting him leave so to proceed. *The United States Marshal will not serve a subpoena upon an unincarcerated witness without the witness fee and travel expenses having been tendered.* No statute authorizes the use of public funds for expenses in civil cases and so even a plaintiff proceeding in forma pauperis must tender the fees.

In addition to themselves, defendants anticipate calling the following witnesses:

1. K. Guillen, Correctional Sergeant, High Desert State Prison
2. D. Hartsook, Correctional Officer, High Desert State Prison
3. D. McBride, Correctional Officer, High Desert State Prison
4. D. Jackson, Correctional Counselor II, High Desert State Prison
5. G. Sweeney, Staff Physician, California State Prison, Solano
6. If necessary, the custodians of records for Plaintiff's central inmate file and medical file
7. If necessary, the custodian(s) of records who maintain(s) the central inmate files for any inmate witnesses.

Any party may call any witness identified by another party. No other witness will be permitted to testify. The court will, not later than six weeks before trial, issue all necessary writs to provide for the attendance at trial of plaintiff and his incarcerated witnesses.

**EXHIBITS, SCHEDULES AND SUMMARIES**

In his pretrial statement, plaintiff identifies the following documents and other exhibits he expects to offer at trial:[3]

1. Pertinent medical files
2. HDSP Operational Procedure #612 Disability Placement Program
3. HDSP Orientation Manual, Chapter 5, Adult Custody and Security Operations
4. California Code of Regulations, Title 15, §§ 3254-3269
5. Defendants Blauser's declaration in support of motion for partial summary judgment
6. Defendants Martin's declaration in support of motion for partial summary judgment

---

[3] Plaintiff unnecessarily submitted approximately 600 pages of exhibits with his pretrial statement. Those documents will be disregarded. Proposed exhibits must be specifically itemized in a list of exhibits in the pretrial statement, but copies of the exhibits need not exchanged until 28 days prior to trial. *See infra*. The exhibits need not be submitted to the court until the time of trial. Plaintiff is cautioned, however, that any exhibit not listed in his "exhibit list" in his pretrial statement will not be admitted at trial. The court will not peruse plaintiff's 600 pages to determine for him whether any relevant documents have been identified in his exhibit list. The court will, however, grant plaintiff 30 days to determine whether his list is complete, and if not, to file an amended exhibit list. The exhibit list must clearly describe and identify (by date and title, where applicable) each document that plaintiff will offer as evidence. Failure to do so may preclude the use of the document(s) at trial.

Defendants expect to use the following exhibits at trial:

1. Plaintiff's Abstract of Judgment
2. Plaintiff's Chronological History (CDCR Form 112)
3. Rules Violation Report (CDC Form 115), Log No. FA10-05-003
4. Crime/Incident Report, Part C—Staff Report (CDC Form 837-C), Incident Log No. HDSP-FAO-10-05-0218, prepared by K. Guillen, dated May 3, 2010
5. Medical Report of Injury or Unusual Occurrence (CDC Form 7219), dated May 3, 2010
6. Inmate/Parolee Appeal (CDC Form 602), Log No. HDSP-A-10-00691, and related First-, Second-, and Director's-Level responses
7. Health Care Services Request Form (CDC Form 7362), dated May 4, 2010.2
8. Comprehensive Accommodation Chrono (CDC Form 7410), dated September 14, 2009
9. Disability Placement Program Verification (DPPV) (CDC Form 1845), dated January 27, 2011
10. DPPV computer summary, dated March 1, 2010
11. A diagram of HDSP's Facility A Photographs of Facility A, Housing Unit 2, and the Facility A main recreation yard
12. Use of Force video prepared by Sgt. K. Guillen in connection with Crime/Incident Report, Incident Log No. HDSP-FAO-10-05-0218
13. Title 15 of the California Code of Regulations, §§ 3005(b), 3268.2, and 3270
14. Court Ordered Remedial Plan ICO Armstrong v. Davis, amended January 3, 2001
15. HDSP Operational Procedure #612—Disability Placement Program policy, dated July 2008
16. Plaintiff's Response to Defendants' Answer to Plaintiff's Complaint, dated March 19, 2012 (ECF No. 47).
17. Plaintiff's responses to Defendant Blauser's interrogatories, set one, and requests for admissions, set one
18. Plaintiff's responses to Defendant Martin's interrogatories, set one, and requests for admissions, set one

1  Defendants note that they intend to present some of their exhibits utilizing the court's
2  ELMO projector and AV equipment.
3  Except as otherwise ordered, the parties shall mail copies of their exhibits, schedules, and
4  summaries and other items they anticipate offering into evidence to all other parties no later than
5  twenty-eight day before trial.
6  Objections to a party's items sought to be introduced into evidence shall be filed twenty-
7  one days before trial.  Each item to which no pretrial objection is made will be forthwith received
8  into evidence.
9  If defendants object to any of plaintiff's exhibits which purport to be copies of records
10  from the California Department of Corrections and Rehabilitation on foundational grounds or
11  otherwise dispute the authenticity of those copies, defendants shall subpoena or otherwise
12  produce the custodians of the records for testimony at trial.  To the extent defendants anticipate
13  that plaintiff will so object, the custodians of records are permitted to authenticate documents
14  through their declarations.
15  Plaintiff will use numbers to mark his exhibits; defendants will use letters.
16  The parties are directed to bring an original and one copy of each exhibit to trial.

**DISCOVERY DOCUMENTS**

Plaintiff anticipates using defendants' May 3, 2012 responses to his interrogatories and requests for admissions.

Defendants will offer portions of plaintiff's deposition transcript for purposes of cross-examination and impeachment.  Defendants will also offer plaintiff's responses to defendants' interrogatories and requests for admissions.

**FURTHER DISCOVERY OR MOTIONS**

Aside from motions in limine, defendants may, if appropriate, move for dismissal under Rule 50 of the Federal Rules of Civil Procedure at the close of the evidence.

**STIPULATIONS**

Defendants intend to confer with plaintiff about stipulating to the authenticity of the documents identified in their exhibit list, and about preparing joint trial exhibits.

**AMENDMENTS/DISMISSALS**

None.

**SETTLEMENT NEGOTIATIONS**

There have been no settlement negotiations to date.  The parties do not believe that a settlement conference would be helpful.

**AGREED STATEMENTS**

None.

**SEPARATE TRIAL OF ISSUES**

Defendants request that the trial be bifurcated, with the issue of punitive damages being tried separately, if necessary.  Whether to bifurcate is deferred to the trial judge who will decide the matter at a later time.

**IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

Plaintiff requests appointment of a medical expert and a "law enforcement expert."  ECF No. 98 at 32-37.  These requests are denied.

The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. *Tedder v. Odel*, 890 F.2d 210 (9th Cir. 1989). The in forma pauperis statute does not authorize the expenditure of public funds for witnesses.  *See* 28 U.S.C. § 1915; *see also Gorton*, 793 F. Supp. 2d at 1184 n.11

Federal Rule of Evidence 706 authorizes the court to appoint a neutral expert witness and to apportion the fee among the parties.  *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated and remanded on other grounds by Helling v. McKinney*, 502 U.S. 903 (1991); *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 665 (7th Cir. 2002).  The court considers several factors in determining the necessity of a neutral expert.  First, and most importantly, the court considers whether the opinion of a neutral expert will promote accurate factfinding. *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011).  Here, plaintiff fails to demonstrate that the proposed expert testimony would promote accurate factfinding.  While a medical expert would presumably be able to testify about plaintiff's present condition, he could not testify as to whether defendants' actions were a violation of plaintiff's rights, nor could he

testify about the extent of plaintiff's injuries following the May 3, 2010 escort. Similarly, determining whether defendants' use of force was reasonable does not require expert testimony regarding "technical force maneuvers" or "training strategies to deal with . . . ADA prison inmate[s]." *See* ECF No. 98 at 32.

Plaintiff's request for the appointment of experts is denied. *See Moran v. Dovey*, No. 1:08-cv-0016 GBC, 2012 U.S. Dist. LEXIS 75691, at *2-3 (E.D. Cal. May 31, 2012) (denying plaintiff's request for appointment of expert witness, noting the court's "burgeoning docket of civil rights cases filed by prisoners proceeding pro se and in forma pauperis," and that "[t]he facts of this case are no more extraordinary and the legal issues involved no more complex than those found in the majority of the cases now pending before the Court.").

**ATTORNEYS' FEES**

Plaintiff requests the "pro per fees of $50.00 an hour," amounting to $15,600 in attorney fees. ECF No. 98 at 19. Plaintiff, however, is proceeding pro se and attorney's fees are not appropriate.

If they prevail at trial, Defendants will request an award of costs, but not attorneys' fees.

Any motions for costs or attorneys' fees shall be filed after judgment and timely presented in accordance with Local Rules 292 and 293.

**JURY TRIAL**

All parties have timely requested trial by jury.

Jury trial is scheduled to begin on October 21, 2014 at 10:30 a.m. in Courtroom No. 4, 15th Floor, before United States District Judge Lawrence K. Karlton. Although the parties do not provide a good faith estimate, the court anticipates that the matter will be submitted to a jury for verdict within two to three days.

**PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS**

The parties' proposed jury voir dire and proposed jury instructions (as described in Local Rules 162.1(a) and 163(a)) shall be lodged with the clerk and copies served on all parties no later than fourteen days before trial.

/////

**SUMMARY OF ORDER**

1. Plaintiff's May 24, 2013 request to amend his prayer for relief (ECF No. 86) is denied as unnecessary.
2. Within 30 days of the date of this order, plaintiff may file an amended and comprehensive list of exhibits. Any such list need not be accompanied by the exhibits themselves.
3. Unless otherwise ordered, the parties shall mail copies of their exhibits, schedules, and summaries and other items they anticipate offering into evidence to all other parties no later than twenty-eight days before trial.
4. Objections to a party's items of evidence sought to be introduced into evidence shall be filed no later than twenty-one days before trial.
5. Motions in limine shall be filed no later than twenty-one days before trial.
6. Trial briefs, proposed jury voir dire and proposed jury instructions shall be filed no later than fourteen days before trial.

**MODIFICATION OF PRETRIAL ORDER**

Each party is granted thirty days to object to this Pretrial Order. Any objections shall set forth the basis of the objections and any changes to be made. Each party is also granted fourteen days thereafter to respond to the other party's objections. If no objections are made, the Pretrial Order will become final without further order of the court.

Pursuant to Federal Rule of Civil Procedure 16, the final pretrial order shall control the subsequent course of this action and will not be modified except according to its terms or to prevent manifest injustice.

So ordered

DATED: March 21, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE